# EXHIBIT A

**DANNY ELMORE, ESQUIRE**
**ELMORE, PUGH & WARREN, P.C.**
Identification No. 40705
The Philadelphia Building, Ste. 800
1315 Walnut Street
Philadelphia, PA 19107
(215) 732-9011

ATTORNEY FOR PLAINTIFF 

| | |
|---|---|
| William G. Ward<br>223 West Red Lion Road<br>Bear, Delaware | **COURT OF COMMON PLEAS**<br><br>**PHILADELPHIA COUNTY** |
| James McQuade<br>7 Equestrian Road<br>Egg Harbor Township, NJ 08234 | **TERM** |
| Jovanny Padin<br>4339 Chippendale Street<br>Philadelphia, Pa 19136 | |
| And, | |
| Vasken Sarkahian<br>325 CLearbrooke Lane<br>Landsdown, Pa 19050 | |
| Plaintiffs, | |
| Vs. | |
| UPS 1 Hog Island Road<br>Philadelphia, Pa | |
| Defendant | |

Case ID: 110600107

## NOTICE OF COMPLAINT

"You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by Attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further Notice for any money claimed in the Complaint or for any other claim or relief requested by t he Plaintiff. You may lose money or property or other rights important to you."

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUR WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PENNSYLVANIA 19107
(215) 238-1701

## COMPLAINT IN CIVIL ACTION

### AVISO

"Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abodago y entregar a la corte en forma escrita sus defensas a sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso a notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted compla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

"LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO

TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL

SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA

CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR

Case ID: 110600107

DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVOCIO DE REFERENCIA E INFORMCION LEGAL
ONE READING CENTER
FILADELFIA, PENNSYLVANIA 19107
(215) 238 1701

Respectfully,

Danny Elmore, Esquire
ELMORE, PUGH & WARREN. P.C.
Attorneys for Plaintiff
1315 Walnut Street, Suite 800
Philadelphia, PA 19107

Case ID: 110600107

DANNY ELMORE, ESQUIRE     ATTORNEY FOR PLAINTIFFS
Identification No.: 40705
The Philadelphia Building, Ste. 800
1315 Walnut Street
Philadelphia, PA 19107
(215) 732-9011

| | |
|---|---|
| William G. Ward<br>223 West Red Lion Road<br>Bear, Delaware | **COURT OF COMMON PLEAS**<br><br>**PHILADELPHIA COUNTY** |
| James McQuade<br>7 Equestrian Road<br>Egg Harbor Township, NJ 08234 | **TERM** |
| Jovanny Padin<br>4339 Chippendale Street<br>Philadelphia, Pa 19136 | |
| And, | |
| Vasken Sarkahian<br>325 CLearbrooke Lane<br>Landsdown, Pa 19050 | |
| Plaintiffs, | |
| Vs. | |
| UPS 1 Hog Island Road<br>Philadelphia, Pa | |
| Defendant | |

## COMPLAINT
### WRONGFUL TERMINATION
### AND FAILURE TO PROMOTE
### IN VIOLATION OF PUBLIC POLICY

1. The Plaintiff, William G. Ward, is a citizen who resides at 223 W Red Lion Road in the City of Bear and County of New Castle, State of Delaware.

Case ID: 110600107

2. The Plaintiff, James McQuade, is a citizen who resides at 7 Equestrian Road, Egg Harbor Township and County of Atlantic, State of New Jersey.

3. The Plaintiff, Jovanny Padin, is a citizen who resides at 4339 Chippendale Street, in the City of Philadelphia and County of Philadelphia, Commonwealth of Pennsylvania.

4. The Plaintiff, Vasken Sarkahian, is a citizen who resides at 325 Clearbrook Lane, in the City of Landsdown and County of Delaware, Commonwealth of Pennsylvania

5. The Defendant, UPS is a corporation doing business in the City and County of Philadelphia, Commonwealth of Pennsylvania.

6. At all relevant times hereto, defendant has been a corporation engaged in the delivery of packages and related services in the City of Philadelphia, County of Philadelphia.

7. Plaintiff has met all conditions precedent to filing this suit.

8. This court has jurisdiction over the cause of action of wrongful discharge from employment and wrongful failure to promotion, pursuant to **Shick v. Shirley**, 716 A.2d 1231 (Pa. 1998) and **Rothrock v. Rothrock Motor Sales, Inc.,** 883 A. 2d 511 (Pa. 2005), (allowing cases to be litigated where violations of public policy created an exception to the at-will employment doctrine.

9. In the summer of 2006 an incident occurred at the UPS site in Philadelphia, Pennsylvania. A stink bomb was discharged in an empty van at defendant's PHL (Philadelphia) facility. The van was used by the crew supervised by plaintiff William Ward.

10. Prior to the summer of 2006, several stink bombs had been discharged, it is the information and belief that employees discharged stink bombs in empty van as a "rite of passage" to new employees.

11. It was not known which employee set the stink bomb off in the summer of 2006, however,

Case ID: 110600107

plaintiff William Ward was informed by a supervisor, who was not present when the stink-bomb was discharged, that an employee, Eric Diem, may have set the stink bomb off, because it was believed that he played with stink bombs on the ramp.

12. Plaintiff William Ward informed Eric Diem that, while he did not know whether Diem set off the stink bomb, the act was not funny and Ward did not want it to happen again.

13. Around January 2007, Eric Diem set off a stink bomb in an empty crew van.

14. Around January 2007, agents of the defendant, including Division Manager Russ McPaul and Manager John Fiorentino, informed William Ward that it was UPS's position that Eric Diem would be terminated.

15. Manager John Fiorentino told all part-time supervisors that Eric Diem would be made an example and when he (Fiorentino) fires an employee he knows "ways to make sure they stay fired."

16. Following the incident, Eric Diem admitted to setting off the stink bomb and asked that his nine years of employment be counted as a mitigating factor. Eric Diem was fired in January 2007.

17. During the period from January to May 2010, John Fiorentino had several meetings with the work crews of part-time supervisors William Ward and James McQuade to obtain statements against Eric Diem. Despite that employees denied observing Diem set of the stink bomb, Fiorentino demanded that work crews sign statements that they had seen Diem set off the stink bomb.

18. As employees were aware that the statements would be utilized during the grievance process, plaintiffs William Ward, James McQuade and refused to sign false statements.

Instead, truthful statements were submitted.

19. When plaintiffs William Ward and his supervisees refused to support the false statements, supervisors Florentino and McPaul began to reprimand and otherwise treat said employees more harshly in regard to the terms and conditions of their employment.

20. Pursuant to a collective bargaining agreement, terminated employees are provided levels of opportunities "steps" to regain employment. At the first step, the employee is provided the opportunity to informally request reinstatement. Erik Diem informally sought reinstatement through Russ McPaul, Division Manager, but was denied reinstatement. McPaul suggested that Diem resign rather than pursue reinstatement.

21. An arbitration hearing for Diem, the second step in the grievance process, was schedule around May 2, 2007.

22. Prior to a labor hearing, Manager John Fiorentino demanded that plaintiff William Ward revise his truthful statement to include false information including that:

    1) Eric Diem was responsible for the smoke bomb set off in 2006.

    2) William Ward had reprimanded Diem for the incident.

    3) If there were any reoccurrences, Diem would be terminated.

23. The statement drafted by John Fiorentino was in the form of an affidavit, requiring notarization, under oath, and was to be used in Diem's arbitration hearing.

24. William Ward refused to falsify the affidavit and instead offered to provide a truthful statement.

25. Plaintiff's James McQuade, Jovanny Padin and Vasken Sarkahian informed Managers John Fiorentino and Russ McPaul that they supported William Ward regarding his truthful statement. Plaintiffs McQuade, Padin and Sarkahian had also earlier written letters in

support of reinstating Erik Diem.

26. At the arbitration hearing, Russ McPaul Division Manager, and Jeffery Pagula, attorney for the employer, informed Diem that if he continued to seek reinstatement, a complaint would be filed against him with the Federal Aviation Administration ("FAA").

27. Prior and during April 2007, plaintiffs William Ward, James McQuade, Jovanny Padin and Vasken Sarkahian were being trained by defendant to become full-time supervisors. As full-time supervisors, plaintiffs would have been entitled to receive employment benefits including retirement benefits and medical, dental and eye glasses benefits.

28. After the plaintiff's provided statements supporting William Ward's truthful statement, Florentino and McGowen told plaintiff's that they did not see their promotions happening. Plaintiffs were brought into a meeting with Manager Russ McPaul and were shown letters that plaintiff's had written in support of Ward's statement. Plaintiff's were informed that their "stocks had dropped," and warned to retract their statements. When plaintiff's informed Florentino and McGowen they were not supporting false statements, the managers began a campaign of reprimanding plaintiffs.

**Regarding Plaintiff William Ward:**

29. Prior to refusing to amend his statement and otherwise provide false information against Eric Diem, William Ward informed that he would be promoted in the near future.

30. After plaintiff Ward refused to amend his statement to include the false information provided by supervisors Florentino and McGowen, he was informed that he would not be considered for promotion to full-time supervisor and that his position was in jeopardy.

31. After William Ward refused to submit false evidence and a false affidavit, defendant UPS's

Case ID: 110600107

supervisors began to reprimand Ward on a constant and regular basis and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their work was not overly scrutinized.

32. After plaintiff William Ward refused to provide a false affidavit, he was terminated for failing to load an airplane in a timely manner. However, the airplane was timely loaded and the plane took off on time. Consequently, Ward was not terminated for failing to timely load a plane, but was terminated in retaliation for failing to provide a false affidavit.

33. Due to the unreasonable, unlawful conduct of defendant's supervisors, plaintiff William Ward suffered great humiliation, and otherwise suffered great mental and physical anguish.

**Regarding Plaintiff James McQuade:**

34. Prior to refusing to provide false evidence against Erik Diem and assisting William Ward regarding his refusal to submit false evidence including a false affidavit, plaintiff James "Jim" McQuade had been informed that he was on the fast-track for promotion to full-time supervisor.

35. As a Ramp supervisor, he was in a position which was viewed as a supervisor in line for a promotion. Plaintiff McQuade was also being provided training materials for promotion.

36. While plaintiff was not promoted to full-time supervisor, it was filled by Anthony Rako, who was less senior and less qualified for the position. Plaintiff McQuade had trained Anthony Rako to take over his duties after McQuade's promotion.

37. After William Ward refused to provide a false affidavit, and plaintiff Jim McQuade refused to support the false affidavit, although he has been stationed in one area for five (5) full years of employment, defendant began to switch him from area to area for no apparent reason.

38. After assisting William Ward regarding his refusal to submit false evidence and a false affidavit, plaintiff Jim McQuade, defendant UPS supervisors began verbally reprimand McQuade on a constant and regular basis and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their work was not overly scrutinized.

39. From the time plaintiff McQuade assumed his position as Part-Time Supervisor until he suffered a stroke **(time period)**, he performed exceptionally well, consistently received positive performance appraisals and received several incentive awards. McQuade was required to discontinue working after his stroke.

40. Due to the unreasonable, unlawful conduct of defendants supervisors, plaintiff McQuade, suffered a stroke and other related physical ailments, and otherwise suffered great mental and physical anguish.

**Regarding Plaintiff Jovanny Pavin:**

41. Prior to refusing to provide false evidence against Erik Diem and assisting William Ward regarding his refusal to submit false evidence including a false affidavit, plaintiff Jovanny Pavin had been informed that he was on the fast-track for promotion to full-time supervisor.

42. After plaintiff refused to provide false information regarding Eric Diem, plaintiff Jovanny Pavin, who had worked in the Night Ramp Training Department, was taken from his training assignment and replaced by less qualified and less experienced employees. Plaintiff Pavin was also reassigned to the Ramp loading aircraft, a non-promotional position.

43. Pavin was asked why he had involved himself in William Ward's matter. Although he had

been stationed in one area for five full years of employment, defendant began to switch him from area to area. Plaintiff Jovanny Pavin was thereafter repeatedly passed over for promotion, verbally reprimanded on a constant and regular basis, and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their work was not overly scrutinized.

44. As a Ramp supervisor, he was in a position which was viewed as a supervisor in-line for a promotion. Plaintiff Pavin was also being provided training materials for promotion.

45. While plaintiff was not promoted to full-time supervisor, it was filled by Steve Oullemet, who was less senior and less qualified for the position.

46. After William Ward refused to provide a false affidavit, and plaintiff Jovanny Pavin refused to support the false affidavit, although he has been stationed in one area for five (5) full years of employment, defendant began to switch him from area to area.

47. After assisting William Ward regarding his refusal to submit false evidence including a false affidavit, plaintiff Jovanny Pavin, defendant UPS supervisors began to verbally reprimand Jovanny Pavin on a constant and regular basis and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their work was not overly scrutinized.

48. Due to the unreasonable, unlawful conduct of defendants supervisors, plaintiff Jovanny Pavin suffered great humiliation, and otherwise suffered great mental and physical anguish.

**Regarding Plaintiff Vaskin Sarkahain:**

51. After William Ward refused to provide a false affidavit, and plaintiff Vaskin Sarkahain refused to support the false affidavit, he was informed that he was no longer on the fast track to promotion. He was removed from his position as Part-Time Supervisor for the

Case ID: 110600107

Ramp Division and thereafter denied positions to full-time supervisor. Plaintiff Vaskin Sarkahain was also verbally reprimanded on a constant and regular basis and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their work was not overly scrutinized.

52. Prior to assisting William Ward regarding his refusal to submit false evidence including a false affidavit, plaintiff Vaskin Sarkahain had been informed that he was on the fast-track for promotion to full-time supervisor.

53. As a Ramp supervisor, he was in a position which was viewed as a supervisor in-line for a promotion. Plaintiff Vaskin Sarkahain was also being provided training materials for promotion.

54. From the time plaintiff Sarkhain assumed his position as Part-Time Supervisor until he was required to leave due to an automobile accident in Mid 2007, he performed exceptionally well, consistently received positive performance appraisals and received several incentive awards.

55. While plaintiff was not promoted to full-time supervisor, it was filled by Christopher Jolz, who was less senior and less qualified for the position.

56. After William Ward refused to provide a false affidavit, and plaintiff refused to support the false affidavit, although he has been stationed in one area, defendant began to switch him from area to area.

57. After assisting William Ward regarding his refusal to submit false evidence and a false affidavit, plaintiff Vaskin Sarkahian, defendant UPS supervisors began to verbally reprimand Vaskin Sarkahian on a constant and regular basis and his work was greatly scrutinized, while other part-time supervisors were not verbally reprimanded and their

Case ID: 110600107

work was not overly scrutinized.

58. Due to the unreasonable, unlawful conduct of defendant's supervisors, plaintiff Vaskin Sarkahian suffered great humiliation, and otherwise suffered great mental and physical anguish.

59. As a result of defendant's intentional and malicious act, plaintiffs suffered great mental anguish and other emotional pain and suffering.

WHEREFORE, the Plaintiff demands judgment in their favor and against defendant, in a sum in excess of Fifty-Thousand Dollars, together with interest, costs, attorney's fees and other relief as the Court may deem just and proper.

Respectfully submitted,

DANNY ELMORE, ESQ.
ATTORNEY FOR PLAINTIFF

Date: June 6, 2011

Case ID: 110600107

## VERIFICATION

I, Danny Elmore, Esquire, under the authority of the William Ward, James McQuade, Jovanny Padin and Vasken Sarkahian, state that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief, and that the statements in said document is subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

I further understand that this verification is not meant to replace that required in accordance to the Rules of Civil Procedure, therefore, upon execution and receipt of the Petitioner's Verification, I shall forward same to the Court for prompt filing.

DANNY ELMORE, ESQUIRE
Attorney for Plaintiffs

Case ID: 110600107