IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM G. WARD, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED PARCEL SERVICE, Inc. | : | NO. 12-2886 |

MEMORANDUM

**L. Felipe Restrepo, J.**                                                                           **January 2, 2014**

      William G. Ward brought suit against his former employer, United Parcel Service, Inc. ("UPS"), alleging that he was wrongfully discharged for refusing to give false evidence in an internal grievance proceeding. Three of his former colleagues – James McQuade, Jovanny Padin, and Vasken Sarkahian, also plaintiffs in this suit – claim to have been denied promotion and otherwise punished by UPS for supporting Ward. For the reasons that follow, the Court will grant summary judgment in favor of UPS.

**I. BACKGROUND**

      The Philadelphia airport has doubtless been the site of many indignities. Travelers who battled security lines and boarding mobs in 2006 and 2007, though, likely remained oblivious to a different plague of that time: a rash of "stink bombs" released at the UPS airport facility. The alleged facts are as follows. Prior to 2006, "several stink bombs had been discharged" in empty UPS vans, apparently as a "rite of passage" for new employees charged with the operation of said vans. Doc. 1-1 (Complaint), ¶ 10. In the summer of 2006, someone released a stink bomb in a van used by the crew that Ward supervised. *Id.* ¶ 9. Ward's own supervisor told him that one of his crew, Erik Diem, was a possible culprit; Ward, in turn, warned Diem that he "did not want it to happen again." *Id.* ¶ 11-12.

In January of 2007 it happened again. Erik Diem admitted responsibility and was fired. *Id.* ¶¶ 13-16. Diem grieved his termination. *Id.* ¶¶ 17-21. In the course of that process, Ward's supervisors requested that he sign a notarized affidavit stating, *inter alia*, that Diem was responsible for the 2006 incident. *Id.* ¶¶ 17-23. Ward refused to sign the affidavit, which he viewed as untruthful (because he did not know whether Diem had released the 2006 stink bomb), and instead submitted a "truthful statement." *Id.* ¶¶ 18, 24-28. Plaintiffs McQuade, Padin and Sarkahian expressed their support for both Ward and Diem to UPS managerial staff. *Id.* ¶ 25.

According to the plaintiffs, UPS managers responded to these events with hostility. The managers allegedly held a meeting at which the plaintiffs were "warned to retract their statements" and told that "their 'stocks had dropped.'" *Id.* at ¶ 28. The managers then denied the plaintiffs promotions for which they had been trained. *Id.* ¶¶ 27-59. More broadly, the managers subjected the plaintiffs to special scrutiny and undertook a general campaign of harassment. *Id.* By June 29, 2007, Ward had been terminated from his employment. *Id.* ¶ 32; Doc. 13 (Def.'s Mtn.), p. 18 (Exh. A); Doc. 15 (Pls.' Resp.), p. 5. The reason given was that he had failed to timely load an airplane, but Ward claims that this was pretext, and that he was actually fired for refusing to sign the false affidavit. Compl. ¶ 32. Sarkahian also left UPS in "Mid 2007." *Id.* at ¶ 54.

Ward, McQuade, Padin and Sarkahian – all of whom were at-will employees – brought suit against UPS in Pennsylvania state court, alleging "Wrongful Termination and Failure to Promote in Violation of Public Policy." Compl., p. 5. UPS removed the action to federal court on the basis of diversity of citizenship. Doc. 1. UPS then moved for "Judgment on the Pleadings, or, in the Alternative, for Summary Judgment." Doc. 13. This motion remains pending before the Court.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has federal subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  Because UPS' motion requires the Court to consider material outside the pleadings, the Court will treat it as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[1]  Given that UPS did move for summary judgment (and nearly one year ago), the plaintiffs have had ample notice and the "opportunity to present all the material that is pertinent to the motion."  *Id.*

In ruling on a motion for summary judgment, the Court must "construe the evidence in the light most favorable" to the non-moving party, *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013), and grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A 'genuine dispute' exists if a reasonable jury could find for the nonmoving party."  *Zimmerman*, 706 F.3d at 176.

This case requires the Court to apply Pennsylvania law.  Where there is no precedent from the Pennsylvania Supreme Court directly on point, "we must predict how that court would resolve the issue should it be called upon to do so."  *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 613-14 (3d Cir. 1992).  "Although decisions by Pennsylvania's intermediate appellate courts are not conclusive in predicting how the state's highest court would decide an issue, they suggest how that court might decide and may constitute presumptive evidence of state law in appropriate circumstances."  *Id.*

---

[1] While the document appended to UPS' motion is concededly authentic and relevant to Ward's claim, the document itself does not form the basis of the claim.  The Court therefore cannot consider it without treating the motion as one for summary judgment.  *Cf. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are *based on* the document.") (emphasis added).

### III. DISCUSSION

#### A. Ward and Sarkahian's Claims are Time-Barred.

UPS alleges that Ward and Sarkahian's claims for wrongful discharge are time-barred by the two-year statute of limitations applicable to Pennsylvania tort actions, 42 Pa. Cons. Stat. Ann. § 5524(7). The plaintiffs respond that, although they were employed at will, their claims actually allege a "breach of the contractual relationship between plaintiff's [sic] and defendant," Doc. 15 at p. 11, and that the four-year statute of limitations applicable to contract claims should therefore apply. In support, Plaintiffs cite *McGinley v. Burroughs Corp.*, 407 F. Supp. 903, 910 (E.D. Pa. 1975) ("Any contract, including a contract at will, which is terminated for a reason contrary to the public policy of Pennsylvania gives rise to a claim for breach of contract."), and *Darlington v. Gen. Elec.*, 504 A.2d 306, 318 (Pa. Super. 1986) ("The public policy exception [to the at-will employment doctrine] has at times been called a contractual remedy.") (citing *McGinley*, 407 F. Supp. at 910).

As the plaintiffs themselves acknowledge, however, *Darlington* explains that Pennsylvania courts have nonetheless classified wrongful discharge as a tort. *Darlington*, 504 A.2d at 318 ("Pennsylvania has taken the position that 'wrongful discharge' based on contravention of public policy sounds in trespass rather than assumpsit. . . . Moreover, wrongful discharge has been called a species of the more inclusive tort of intentional interference."); *see also Weaver v. Harpster*, 975 A.2d 555, 567 (Pa. 2009) (referring to the "common law tort action for wrongful discharge"). Pennsylvania and federal courts have universally concluded that the two-year limitations period therefore applies. *See, e.g.*, *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 251 (3d Cir. 2002) ("Pennsylvania has applied a two year statute of limitations in wrongful discharge causes of action."); *Gates v. Servicemaster Commercial Serv.*, 631 A.2d 677,

679 (Pa. Super. 1993) ("[T]he count in wrongful discharge is a tort action with a two-year statute of limitations."); *see also Campion v. Ne. Utilities*, 598 F. Supp. 2d 638, 645 (M.D. Pa. 2009); *Robbins v. Philadelphia Sports Club*, No. 05-2676, 2005 WL 3369157, at *3-4 (E.D. Pa. 2005); *Deily v. Waste Mgmt. of Allentown*, 118 F. Supp. 2d 539, 545 (E.D. Pa. 2000); *Collins v. AT&T Corp.*, No. 96–7394, 1997 WL 460167, at *1 (E.D. Pa. 1997); *Monkelis v. Scientific Sys. Servs.*, 653 F. Supp. 680, 683 (W.D. Pa. 1987).

Pursuant to this authority, Ward and Sarkahian's wrongful discharge claims are subject to the two-year limitations period of 42 Pa. Cons. Stat. Ann. § 5524(7), and are thus time-barred: The alleged injuries were complete no later than the end of 2007, when both had ceased employment with UPS, and the plaintiffs did not file suit until June of 2011.  There is no dispute of material fact.  UPS is entitled to judgment as a matter of law with respect to Ward and Sarkahian's claims; the Court will therefore grant summary judgment in its favor.

### B. McQuade and Padin Have Not Stated a Claim.

In Pennsylvania, the common-law tort of "wrongful discharge" is a narrow exception to the general principle that "an employer may terminate an employee for any reason, unless restrained by contract" or by statute.  *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000).  To prevail on a wrongful discharge claim, an employee must prove that his or her "termination implicates a clear mandate of public policy in [Pennsylvania]."  *Id.* at 314.

Neither McQuade nor Padin has alleged that he was terminated at all.  McQuade apparently left his employment with UPS after a stroke.  Compl. ¶ 39.  The Complaint does not specify whether Padin ever ceased to work for UPS or still does.  The plaintiffs urge the Court to recognize a "wrongful adverse action" claim on the basis that a materially adverse employment action can support a Title VII claim, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53

5

(2006), but the Court will decline that invitation.  The plaintiffs have identified no Pennsylvania case suggesting or supporting a common-law claim for failure to promote (or other adverse employment action short of discharge) in contravention of public policy.  This Court is not at liberty to invent one.  Because neither McQuade nor Padin claims to have been terminated from his employment, neither has stated a claim for wrongful discharge, and UPS is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of UPS on all claims against it.  An implementing order follows.